## CIRCUIT COURT OF WARREN COUNTY

Browning-Ferris, Inc.

v.

James T. Wilson,
Shenandoah Sand, Gravel & Trucking, Inc.,
and Industrial Refuse Service, Inc.

April 6, 1983

Case No. (Chancery) 4177

By JUDGE ARTHUR W. SINCLAIR

The bill of complaint and amendment seek to prohibit James T. Wilson (Wilson) and Shenandoah Sand, Gravel and Trucking, Inc. (Shenandoah), a corporation wholly owned by Wilson, from allegedly violating a restrictive covenant embodied in an employment contract between Browning-Ferris Industries of Virginia, Inc. (Browning) and Wilson dated October 20, 1977. The covenant barred Wilson from engaging in trash or refuse collection within a radius of seventy-five miles of Winchester, Virginia, for a period of two years after leaving the employment of Browning. Browning terminated Wilson's employment June 17, 1981.

The evidence reveals that Browning-Ferris Industries, Inc., purchased Kwik Kleen Refuse Company, Inc., from its owners, James T. Wilson and Jessie Wilson, his wife, in 1972, retaining Wilson as its area manager in the Winchester area and also retaining Jessie Wilson as office manager in the Winchester office. As the result of the sale of the assets of Kwik Kleen to Browning-Ferris Industries, Inc., the Wilsons received an equal number of shares of stock of Browning-Ferris Industries valued at some $230,000.00.

Almost immediately after Browning terminated her husband's employment, Jessie Wilson was also dismissed.

Shortly before his dismissal, Wilson was engaged in working up a bid for trash removal for Warren County. The working papers were never found after Wilson's departure and shortly thereafter Shenandoah submitted a bid to Warren County. Browning sought and obtained a temporary injunction against Wilson and Shenandoah which remains in effect pending determination of this litigation.

Some seven days after Wilson and Shenandoah were enjoined, Industrial Refuse Service, Inc., was organized. Its directors were and are Jessie Wilson and Walter Wilson, brother of James T. Wilson.

Equipment owned by Shenandoah and intended to be used by it in competition with Browning was transferred to Industrial, the consideration being the cancellation of a debt owed by Shenandoah to Jessie Wilson. Industrial was later made a party defendant to this suit, it being alleged that it was engaging in competition with Browning, soliciting Browning's customers and that James T. Wilson was active in the business affairs of Industrial to the extent that Industrial was but a sham and the alter ego of Wilson.

Earlier herein it should have been noted that the employment agreement of Jessie Wilson with Browning contained no non-competition agreement.

At trial Wilson and Shenandoah appeared to concede that the two-year restriction as well as the geographical limitation of seventy-five miles were reasonable restraints. Although the reasonableness of the seventy-five mile provision was questioned during final argument, in my opinion the evidence fully supports the reasonableness of both restrictions. They insist, however, that the agreement should be declared void because it is overly broad and that it restricts these defendants from engaging in acts in the proscribed area not engaged in by Browning. They heavily rely on *Richardson* v. *Paxton Co.*, 203 Va. 790 (1962). There the Court held that the restraint was too broad and that "it encompasses activities in which Paxton is not engaged." Thus, it was deemed unnecessary to protect Paxton's legitimate business interests and was unenforceable.

The employment agreement dated October 20, 1977, was not signed by Wilson until 1980 for reasons appearing in evidence. However, no legal significance is attached

to the omission. It superseded the original of September 19, 1972, which contained a non-competition clause of five years duration and a geographical limitation of one hundred miles.

Paragraph 5 of the employment contract is lengthy and thus not set forth verbatim. Suffice it to say Wilson agreed not to engage, directly or indirectly, in "any business of (i) rubbish, garbage, paper, textile wastes, chemical liquid and other waste collection, recovery, processing, recycling, marketing or disposal, (ii) purchasing (directly or as broker or agent), acquiring, recovering, processing, trading in or selling waste paper, wood, pulp or ferrous or nonferrous metals, (iii) removal, cleaning and replacement of processing catalysts for industrial customers; engaging in chemical and high pressure water cleaning of industrial process equipment; or formulating and marketing of special purpose cleaning chemicals, or (iv) manufacturing, selling, leasing or distributing machinery, equipment or products used or produced in connection with the activities described in subsections (i), (ii) and (iii) above, or (v) any other business engaged in by the company."

Continuing, the contract prohibited the employee during the two-year term from "(i) inducing any customers of the company or corporations affiliated with the company to patronize any similar business; (ii) canvass, solicit or accept any similar business from any customer of the company or corporations affiliated with the company; (iii) directly or indirectly request or advise any customers of the company or corporations affiliated with the company to withdraw, curtail or cancel such customer's business with the company; or."

Finally, it was provided that "in the event that the provisions of Section 5 should ever be deemed to exceed the time, geographic or occupational limitations permitted by the applicable laws, the employee and the company agree that such provisions shall be and are reformed to the maximum time, geographic or occupational limitations permitted by the applicable laws."

It may well be that the evidence did not reveal that Browning-Ferris, Inc., a subsidiary corporation of Browning-Ferris Industries, Inc., was engaged in all of the activities enumerated in the fifth paragraph of the employment contract, although the parent corporation may be so engaged, but it seems only necessary to judge

this case for what it is about and that is the collection and disposition of industrial waste. This is what Browning-Ferris, Inc., is engaged in in the Winchester area, this is the business James T. Wilson and Shenandoah Sand, Gravel and Trucking, Inc. intended to engage in prior to being enjoined, and this is what Industrial Refuse Service, Inc., is engaged in. Wilson agreed to a reformation of the contract, if necessary, so that if it were adjudged overly broad the ruling in *Paxton* would not avail him but, by its terms, the contract operates to narrow the scope of the occupational limitation. If that limitation be reduced solely to the "roll-off" method of collecting and disposing of industrial waste, surely it meets the test that the restraint is reasonable in that it is no greater than necessary to protect the legitimate interests of the employer; that it is not unduly harsh or oppressive in curtailing the employee's effort to earn a livelihood and it is not contrary to sound public policy.

The evidence reveals that Wilson and Shenandoah intended to compete and sought to compete against Browning in violation of Wilson's legal obligation not to do so. As the result, the injunction will be made permanent against Wilson and Shenandoah for a period of two years from October 30, 1981, the date of the original injunction.

Resolving the issues presented by the request for relief against Industrial presents considerably more difficulty.

While the evidence revealed that Wilson openly, and it might be argued, defiantly and arrogantly, assisted in the business affairs of Industrial, although one might gather from his testimony that he barely knew of its corporate existence, I am constrained not to issue an order which would put it out of business despite any financial success it may experience would be shared by Wilson by reason of marriage.

Jessie Wilson was not bound by any non-competition agreement and was thus completely free to compete with Browning if she so desired so long as she did not permit Wilson to violate the terms of his contract or the order of the Court. She had the funds to get started in the business and her purchase of the first glider kit from Shenandoah was, I believe, warranted. She knew the business, having previously owned Kwik Kleen with her husband and subsequently having been employed by the complainant.

The fact that Wilson together with Jessie Wilson was required to personally endorse Industrial's corporate obligations is not remarkable considering the evidence that their rather tidy personal assets are all jointly owned.

Without commenting specifically on the evidence, I simply state that I am persuaded that Wilson took an active part in the operation of Industrial with full knowledge and consent of Jessie Wilson (their protestations to the contrary fail the test of human experience) and Industrial will be enjoined for a period of two years from the date of entry of a final decree herein from soliciting or serving any existing customers of Browning and further enjoined from soliciting or receiving any type of service from James T. Wilson in the operation of Industrial for the same two-year period, including but not limited to the ordering of supplies, signing therefor, solicitation of customers or permitting him to engage in any activity for or on behalf of Industrial.

James T. Wilson will be enjoined for the same two-year period from engaging in any of the above activities on behalf of Industrial.